**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DERIC JOHNSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 09 C 1614 |
| | ) |
| **CHICAGO POLICE OFFICER OSCAR ARROYO, STAR NO. 10910, Individually and as agent of the CITY OF CHICAGO, CHICAGO POLICE OFFICER MICHAEL BURKE, STAR NO. 8447, Individually and as agent of the CITY OF CHICAGO, CHICAGO POLICE OFFICER SIDRONIO ALMAZAN, STAR NO. 5011, Individually and as agent of the CITY OF CHICAGO and CITY OF CHICAGO, a municipal corporation,** | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Deric Johnson was arrested in Chicago's Uptown neighborhood and charged with three traffic violations and with possession of cocaine and marijuana that police found in his car. After an initial hearing, the judge dismissed the marijuana charge for lack of probable cause, and the prosecutor abandoned the traffic charges. At the next hearing, Plaintiff presented evidence calling into question the credibility of one of the arresting officers who testified that he first approached Plaintiff's car because it was parked in a no-parking zone. Before the court could rule on a motion to suppress the evidence of drugs found in Plaintiff's car, the prosecutor abandoned the cocaine charge. Plaintiff then filed suit in state court against the three officers involved in the arrest and against the City of Chicago, asserting state law claims of false arrest (Count I), false imprisonment (Count II), malicious prosecution (Count III), and intentional infliction of emotional distress ("IIED") (Count IV). Plaintiff's complaint also includes federal claims, against the individual Defendants only, for false arrest (Count V) and

conspiracy (Count VI). Plaintiff's final claim (Count VII) seeks indemnification from the City for the Defendant Officers' wrongdoing. Defendants removed the case to federal court and now move for summary judgment on the claims of malicious prosecution, IIED, and conspiracy, as well as the portions of the indemnity claim that relate to those three counts. For the reasons that follow, the motion is granted.

## BACKGROUND

On March 29, 2007, at approximately 9:20 p.m., three Chicago Police Officers, Defendants Oscar Arroyo, Michael Burke, and Sidronio Almazan, were driving in the 5000 block of North Kenmore Avenue when they saw a car parked on the west side of the street. (Defs' 56.1(a)(3) ¶¶ 5, 7.) The officers returned to the same area five or ten minutes later and saw the parked car again. (*Id.* ¶ 10.) Officer Arroyo later testified that his attention was drawn to the car because it was illegally parked in a no-parking zone. (Defs' Ex. H, at 4.) Defendants approached the vehicle and asked Plaintiff, who was in the driver's seat, for his license and insurance information. (Defs' Ex. H, at 10, Ex. I, at 7.) Officers Arroyo and Almazan both testified to detecting the smell of marijuana coming from the car. (Defs' Ex. C, at 16; Ex. H, at 4.) Arroyo also testified that, while standing outside the car, he observed a "rolled cigar containing a green leafy substance in the ashtray." (Defs' Ex. H, at 4, 11.)

After Plaintiff gave Arroyo his licence, Arroyo asked him to step out of the car. (Defs' Ex. I, at 7.) Then, without asking for consent, the officers searched the car and found 2 grams of marijuana and 2.5 grams of cocaine. (Defs' Ex. H, at 4-6, Ex. I, at 7-8; Pl's Ex. E.) The officers arrested Plaintiff and charged him with possession of marijuana and cocaine as well as operating a vehicle without insurance, failure to display a city vehicle sticker, and parking in a no-parking zone. (Defs' Ex. G; Pl's Ex. E.) Defendant Arroyo signed the tickets and criminal complaints, Arroyo and Burke signed the arrest report, and all three Defendant Officers are

2

listed on the arrest report, which identifies Arroyo as the "attesting officer." (Defs' Ex. G; Pl's Ex. D, E.) In that arrest report, Arroyo wrote "5050 N. Kenmore Ave." as the location of the incident. (Pl's Ex. E.) Officer Almazan later explained that the officers could not see an address at the location where Plaintiff's car was parked, so they looked across the street and saw the numbers 5047 and 5051 before choosing 5050 as the address for the report. (Defs' Ex. C, at 33.)

At a preliminary hearing, the prosecutor abandoned (*nolle prosequied*) the traffic tickets, and the court found that there was no probable cause for the marijuana charge. (Defs' Ex. H at 14.) Plaintiff moved to suppress the cocaine evidence. At a hearing on that motion, Plaintiff's lawyer questioned Defendant Arroyo about the no-parking zone. (Defs' Ex. I, at 42-45.) Arroyo testified that he drove past 5050 N. Kenmore "a couple of days" before the hearing and observed a no-parking sign at that time. (*Id.* at 44.) Plaintiff's lawyer showed Arroyo photos of the 5000 block of North Kenmore that the lawyer had taken the day before the hearing, and Arroyo could not locate a no-parking sign in those photos. (*Id.* at 42-45.) When proceedings reconvened the next day, the prosecutor abandoned (*nolle prosequied*) the cocaine charge. (Defs' Ex. J at 26, 28.)

In their summary judgment submissions to the court, Defendants have admitted that there never was a no-parking sign at 5050 North Kenmore, though two such signs were located at approximately 5040 North Kenmore at the time Plaintiff was arrested. (Pl's 56.1(b)(3)(C) Statement of Additional Facts ¶¶ 9-10; Defs' Response to Pl's 56.1(b)(3)(C) Statement of Additional Facts ¶ 9.) Those signs were removed in May 2007, two months after Plaintiff's arrest and two months before the suppression hearing. (Pl's 56.1(b)(3)(C) Statement of Additional Facts ¶ 10.)

Immediately after his arrest, four months before the suppression hearing, Plaintiff had spent two days in jail awaiting his bond hearing. (Defs' Ex. L, at 29, 74.) He described the

3

experience as "hell," but acknowledged that nothing out of the ordinary had occurred while he was in custody, that he did not suffer any mistreatment, and that he had no complaints about his treatment. (*Id.* at 29-31, 74-77.) According to Plaintiff, he "felt bad" when he was locked up; he "was going through a lot" because he was concerned about his job and his family. (*Id.* at 36-37.) Plaintiff testified that as a result of his arrest, he felt "depressed" until the charges were dropped. (Defs' Ex. L at 92-94.) Since his release, Plaintiff has not sought treatment for any physical or mental ailment related to his arrest. (*Id.* at 33-35.) Nor has the incident affected Plaintiff's employment or his relationship with his family. Plaintiff testified that when he informed his employer of his arrest, she told him it would "be all right and go back to work," that he received a pay raise later that year, and that his employer never brought up the incident. (*Id.* at 82-83, 85-86.) Plaintiff's children only stay with him part time, and he testified that he did not miss any time with them due to his arrest. (*Id.* at 87-89.)

Plaintiff's complaint includes seven counts: four state claims against all Defendants—false arrest, false imprisonment, malicious prosecution, and IIED—and two federal claims against the individual Defendants—false arrest and conspiracy—and a claim of indemnity against the City for the Defendant Officers on all counts. Defendants move for summary judgment on the malicious prosecution, IIED, and conspiracy claims, as well as the indemnity claim as it relates to those three.

## **ANALYSIS**

The court will grant summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "On a motion for

summary judgment, the district court must construe all facts and draw all reasonable inferences in favor of the non-movant." *Srail v. Village of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

### A. Count III—Malicious Prosecution

In order to establish malicious prosecution under Illinois law, a party must show:

> "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff."

*Kunz v. DeFelice*, 538 F.3d 667, 681-82 (7th Cir. 2008) (quoting *Swick v. Liautaud*, 169 Ill.2d 504, 512, 662 N.E.2d 1238, 1242 (1996)). Liability for malicious prosecution "extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 348-349, 733 N.E.2d 835, 842 (1st Dist. 2000).

Defendants argue that Plaintiff has failed to present evidence satisfying the first element as to Defendants Almazan and Burke and has failed to present evidence satisfying the second and third elements as to all Defendants. Because the absence of any element defeats a claim for malicious prosecution, *Kunz*, 538 F.3d at 682, the court begins with the second element—termination of the proceeding in favor of the plaintiff. Plaintiff limits his argument to the cocaine charge, which was *nolle prosequied*. That bare fact, however, "is not sufficient to establish that the case was terminated favorably for the plaintiff. Rather, the plaintiff must show that the prosecutor abandoned the case for reasons indicative of the plaintiff's innocence." *Ferguson v. City of Chicago*, 213 Ill.2d 94, 102, 820 N.E.2d 455, 460 (2004) (citing *Swick*, 169 Ill.2d at 513, 662 N.E.2d at 1243). Plaintiff argues that he can meet that standard by showing the absence of "reasonable grounds to pursue the prosecution," (Pl's Br., at 11), but such a showing is not the same as a showing that the dismissal was indicative of innocence. *Id.*

5

Although a case that is *nolle prosequied* may constitute a favorable termination, not every case that is *nolle prosequied* falls into this category. To determine whether Plaintiff's case was *nolle prosequied* for reasons indicative of his innocence, the court must examine the "circumstances surrounding the abandonment of the criminal proceedings." *Swick*, 169 Ill.2d at 513-14, 662 N.E.2d at 1243. The circumstances here are that Defendant Arroyo testified to the existence of a no-parking zone, but photographic evidence seemed to rebut his testimony. (Defs' Ex. I, at 42-45.) Rather than waiting for a ruling on Plaintiff's motion to suppress the evidence, the prosecutor abandoned the case. (Defs' Ex. J at 26, 28.) Plaintiff argues that a reasonable inference from those circumstances is that his case was dismissed because the prosecution determined that Arroyo was not a credible witness. (Pl's Br., at 11-12.) Assuming that a jury could so find, Arroyo's lack of credibility bears no relationship to Plaintiff's innocence on the cocaine charge. Plaintiff apparently succeeded in challenging the *admissibility* of the drug evidence, but he has presented no evidence questioning the *reliability* of that evidence. The court made no formal ruling on the suppression motion, but even if the motion had been granted and the drug evidence suppressed, such a suppression would not be indicative of innocence because the suppression would not be related to the evidence's trustworthiness. *El Ranchito, Inc. v. City of Harvey*, 207 F. Supp. 2d 814, 823 (N.D. Ill. 2002) (dismissal following suppression of illegally obtained evidence not indicative of innocence because plaintiff presented nothing to question the reliability of the evidence); *Dobiecki v. Palacios*, 829 F. Supp. 229, 235-36 (N.D. Ill. 1993) (collecting authority and holding that dismissal based on technical failure to give *Miranda* warnings where statement elicited was unquestionably voluntary was not indicative of innocence); *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 84-85, 761 N.E.2d 560, 564 (2001) (reversal of conviction on appeal based on faulty search warrant was not related to culpability, so was not a favorable termination); *cf. Wilkins v. DeReyes,* 528 F.3d 790, 804-05

(10th Cir. 2008) (relying on *Dobiecki* in concluding that dismissal is a favorable termination where evidence was excluded not for "technical" reasons but because it was unreliable). In short, a dismissal following suppression of evidence for a technical reason is not a reason indicative of innocence, so it cannot support a malicious prosecution claim. *El Ranchito, Inc.*, 207 F. Supp. 2d at 823; *Dobiecki*, 829 F. Supp. at 234. Accordingly, Defendants' motion is granted as to Plaintiff's claim of malicious prosecution.

      **B.**      **Count IV—Intentional Infliction of Emotional Distress**

To succeed on a claim for IIED under Illinois law, a plaintiff must prove three elements:

> "(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress."

*Lewis v. School District #70*, 523 F.3d 730, 746 (7th Cir. 2008) (*quoting Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)); *see also Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 20, 607 N.E.2d 201, 211 (1992). Defendants argue, first, that Plaintiff has not presented evidence from which a jury could find that any of the Defendants' conduct was extreme and outrageous. They also argue that Plaintiff has not presented evidence that he suffered severe emotional distress. Both arguments appear to have merit.

First, the court is does not agree with Plaintiff's characterization of Defendants' conduct as "extreme and outrageous." (Pl's Br., at 13.) The alleged misconduct to which Plaintiff points is the falsification of police reports and criminal charges and the commission of perjury in Plaintiff's criminal proceeding. (*Id.*) To prove that the Defendants falsified the reports and charges and that Officer Arroyo actually lied in his testimony, Plaintiff would need to present evidence showing that the Officers could not have believed that he was parked in a no-parking zone. He has not done that; at best, Plaintiff's evidence shows that the Defendants made a mistake: specifically, they mistakenly believed that he was parked in a no-parking zone. A

7

mistake is not fairly understood as "extreme and outrageous" and cannot be said to "extend beyond the bounds of human decency and be considered intolerable in a civilized community." *Lewis*, 523 F.3d at 747; *see also Schiller v. Mitchell*, 357 Ill. App. 3d 435, 448, 828 N.E.2d 323, 334 (2d Dist. 2005) ("There is nothing inherently extreme and outrageous about conducting investigations or inspecting or questioning or suspecting.").

Nor does Plaintiff's evidence support a finding of emotional distress of sufficient severity. Although emotional distress includes "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea," such distress is only actionable if it is so severe that it is unendurable by a reasonable person. *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 276, 798 N.E.2d 75, 84 (2003). The only evidence Plaintiff presents to show that his distress was unendurable by a reasonable person is his testimony that he went through "hell" and suffered depression while his criminal case was pending. (Pl's Br., at 14.) As Defendants point out, though, Plaintiff's distress went away after the criminal case went away and there is no evidence that, beyond the two days he spent in custody, the arrest disrupted his family or professional life in any way. (Defs' Br. at 8-9.) Plaintiff's testimony on his emotional distress is not sufficient to maintain the IIED claim. *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 38-39, 84 N.E.2d 935, 942 (1st Dist. 1997) (plaintiff who testified that his arrest caused him to be afraid and concerned for his reputation and that he cried when his mother posted bail failed to prove severe emotional distress); *Knysak v. Shelter Life Insurance Co.*, 273 Ill. App. 3d 360, 371, 652 N.E.2d 832, 839-40 (5th Dist. 1995) (plaintiff who testified that he was very upset, very nervous, and very depressed because of defendant's conduct did not suffer severe emotional distress; his depression was no worse than what any person would suffer in similar circumstances); *see also Honaker*, 256 F.3d at 495 n.18 (collecting Illinois cases where plaintiff's complaints were not sufficient to constitute

extreme emotional distress). Accordingly, Defendants' motion is granted as to this claim.

### C. Count VI—Conspiracy

The parties agree that to support a claim of conspiracy under § 1983, Plaintiff must present evidence of an agreement among the Defendant Officers. (Defs' Br. at 3-4; Pl's Br. at 6.) The only evidence that Plaintiff points to in support of an agreement is Officer Arroyo's testimony, which he believes a jury could find to be perjured. (Pl's Br. at 6-7.) That testimony had nothing to do with any agreement among the officers, however. Moreover, even assuming that one officer testified falsely, there is no support for an inference that the three officers made an agreement to violate Plaintiff's constitutional rights. *Cf. United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 546 (7th Cir. 1999) (to avoid summary judgment on conspiracy claim under False Claims Act, plaintiff "must produce more than a whiff of the alleged conspirators' assent") (internal quotation omitted). Finally, to the extent that Plaintiff's conspiracy claim rests on an allegation that Defendants covered up evidence in an attempt to impede his access to the courts, the claim must fail because the alleged cover-up failed; Plaintiff has not been prevented from seeking relief. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 423-24 (7th Cir.2000). Accordingly, Defendants' motion for summary judgment is granted as to this claim.

### D. Count VII—Indemnification

Because the court has granted Defendants' motion for summary judgment on Counts III, IV, and VI, Plaintiff's claim for indemnification as to those claims must also fail. 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.").

## **CONCLUSION**

Defendants' Motion for Summary Judgment on Claims III, IV, and VI and on Claim VII as to those three claims [11] is granted. The case proceeds on Plaintiff's false arrest and false

imprisonment claims (Counts I, II, and V) and the corresponding indemnity claims only.

ENTER:

Dated: March 22, 2010

REBECCA R. PALLMEYER
United States District Judge